UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                               :

DERRICK BAILEY,                             :

                                    :

                         Petitioner,        :

                                    :        07 Civ. 2181(GEL)

                     -v.-                  :

                                    :        **OPINION AND ORDER**

ISRAEL RIVERA,                         :

                                    :

                        Respondent.      :

                                    :
-------------------------------------------------------------x

Derrick Bailey, Coxsackie, New York, pro se.

Ashlyn H. Dannelly, and Frederick H. Wen,
Assistant Attorneys General, New York, New York,
for respondent.


GERARD E. LYNCH, District Judge:

       Derrick Bailey, a New York State prisoner, seeks a writ of habeas corpus, challenging his

conviction for attempted burglary and possession of burglary tools, and his resulting sentence, as

a persistent felony offender, to fifteen years to life in prison.  The petition will be denied.

## BACKGROUND

       The evidence at Bailey's state trial would have permitted a reasonable jury to find the

following facts.  Early in the morning of March 25, 2001, two police officers, patrolling an area

in Harlem that had recently experienced a number of burglaries in which padlocks securing small

commercial premises had been broken, observed Bailey crouched in front of a store, holding a

sledgehammer.  As the police car approached, Bailey brought the sledgehammer back as if to

swing it, but dropped the sledgehammer when bystanders alerted him to the approaching police

car.  Bailey dropped the hammer and fled from the police, first on a bicycle, and then, after

crashing the bicycle into a median, on foot.  Another officer responding to the chase eventually apprehended him.  The police recovered the sledgehammer and a crowbar near the store, and observed that the store's security gate had been partially pried open.

The jury convicted Bailey of attempted burglary and possession of burglar's tools.  At sentencing, the prosecution demonstrated that Bailey had four previous felony convictions for robbery and burglary offenses, as well as three prior misdemeanor convictions and four parole violations.  Bailey also admitted to a long history of drug abuse.  The court found that Bailey was a persistent felony offender, and imposed a sentence of fifteen years to life in prison.

Bailey's conviction and sentence were affirmed by the Appellate Division, the New York Court of Appeals denied leave to appeal, and the United States Supreme Court denied certiorari.  People v. Bailey, 798 N.Y.S.2d 406 (1st Dept.), leave to appeal denied, 5 N.Y.3d 825 (2005), cert. denied, 547 U.S. 1045 (2006).

## DISCUSSION

Bailey raises three claims of constitutional error.  First, he argues that he was denied a fair trial, in violation of the due process clause, because the trial court precluded cross-examination of the arresting officers about his complaint to the Civilian Complaint Review Board ("CCRB") that they had used excessive force in arresting him.  Second, he claims that the court misinstructed the jury with respect to the element of illegal entry in connection with a burglary offense.  And third, he argues that his sentencing to an enhanced term as a persistent offender violated his Sixth Amendment right to a jury trial and his Eighth Amendment right against cruel and unusual punishment.

2

I.      **Claims of Trial Error**

Bailey's claims of trial error may be swiftly rejected.  A federal habeas court may not

review constitutional claims where the denial of those claims in state court was based on an

independent and adequate state procedural ground.  Lee v. Kemna, 534 U.S. 362, 375 (2002);

Coleman v. Thompson, 501 U.S. 722, 729-30 (1991).  The Appellate Division expressly rested

its rejection of Bailey's claims of trial error on the adequate state ground that they had not been

properly raised below.

The Appellate Division reviewed and rejected Bailey's claim that the exclusion of

evidence regarding his CCRB complaint was improper as a matter of state evidence law.  798

N.Y.S.2d at 407.  However, the Appellate Division ruled that his constitutional claim was

"unpreserved," because he "did not assert a constitutional right to introduce the excluded

evidence" at trial.  Id.  The court therefore declined to review the claim.  Similarly, the court

ruled that Bailey's other trial error arguments, including his claim of error in the jury

instructions, were also unpreserved, and declined to review them in the interests of justice.  Id.

The contemporaneous objection rules in New York are well-established and regularly followed,

and have been recognized as an adequate and independent state law ground barring habeas

review.  See, e.g., Richardson v. Greene, 497 F.3d 212, 217-19 (2d Cir. 2007).  Nothing in the

record before this Court casts any doubt on the Appellate Division's assertion that Bailey did not

object to the evidentiary ruling on constitutional grounds, and did not object to the allegedly

erroneous jury instruction at all.  Accordingly, habeas review of these contentions is precluded.

In any event, neither claim of constitutional error has merit.  Bailey first claims that his

right to confront his accusers was violated when the trial court precluded cross-examination of

the arresting officers regarding Bailey's CCRB complaint against them.  The Appellate Division

correctly saw this claim as lacking in merit.  See, e.g., 798 N.Y.S.2d at 407 ("Were we to review

[Bailey's claim that he had a constitutional right to introduce the evidence at issue], we would

find no violation of defendant's right to confront witnesses and present a defense .")  While the

Confrontation Clause is violated when a defendant is "prohibited from engaging in otherwise

appropriate cross-examination designed . . . to expose to the jury the facts from which jurors . . .

could appropriately draw inferences relating to the reliability of the witness," Delaware v. Van

Arsdall, 475 U.S. 673, 680 (1986) (citation and quotation marks omitted), the defendant's "right

to confront and to cross-examine is not absolute and may, in appropriate cases, bow to

accommodate other legitimate interests in the criminal trial process," Chambers v. Mississippi,

410 U.S. 284, 295 (1973) (citation omitted).  "[T]rial judges retain wide latitude . . . to impose

reasonable limits on . . . cross-examination based on concerns about, among other things,

harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is

repetitive or only marginally relevant."  Van Arsdall, 475 U.S. at 679.

Although Bailey's claim that the evidence would tend to prove that the officers were

motivated to fabricate evidence of his criminal acts in order to retaliate for his complaint of

excessive force passes the minimal test of probative value, the Court cannot find that the trial

court's decision that this probative value was outweighed by the danger of confusing the issue

fell outside the court's discretion in managing cross-examination.  In any event, while excluding

evidence of petitioner's CCRB complaint, the trial court allowed cross-examination about

whether the officers used excessive force in arresting him.  (Resp. Br. 3, citing 10/26/01 Tr. 300-

01.)  Bailey evidently failed to take advantage of this opportunity, which would have permitted

the same inferences that the officers were motivated to "cover" any excessive force with a criminal charge.

Bailey next claims that the trial court erred in instructing the jury that an accused burglar "enters a building when he places or holds an instrument in close proximity to a building with intent to use that instrument to effectuate entry." (Resp. Ex. A at 9, citing Tr. 916.)  This instruction was arguably erroneous as a matter of state law.  See People v. King, 61 N.Y.2d 550, 554-55 (1984) (entry requires "insertion of any part of the body into the premises").  Even if a jury instruction is improper under state law, however, federal habeas relief requires a further showing that the petitioner was denied a fundamentally fair trial.  In assessing such a constitutional challenge, "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge."  Cupp v. Naughten, 414 U.S. 141, 146-47 (1973).  "Before a federal court may overturn a conviction resulting from a state trial in which this instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' . . . but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  Id.

No such showing can be made here.  Bailey was charged with, and convicted of, not burglary but *attempted* burglary.  In the context of the entire charge, it is crystal clear that the trial judge was advising the jury of what was necessary to convict him of that charge.  (See Resp. Br. 30, quoting Tr. 915-16.)  While it would no doubt have been preferable to define "entry" correctly with respect to the completed offense, and then separately to address what was necessary to constituted an attempt at entry, the charge as given adequately described the element of attempted entry necessary to convict Bailey of attempted burglary under state law.

5

King, 61 N.Y.2d at 552 (defendant guilty of attempted burglary where he was found crouched

beside a small hole in a security gate pushing and pulling on the gate); People v. Bracey, 41

N.Y.2d 296, 299-300 (1977) (attempt requires conduct tending to effect the commission of the

crime and bringing defendant "within dangerous proximity to the criminal end").

Accordingly, petitioner's claims of trial error are without merit.

## II.     Sentencing as a Persistent Felony Offender

Bailey's objection to his sentence raises a more substantial question.  Bailey was

sentenced to an enhanced term of 15 years to life in prison based on a New York persistent

felony offender statute, NYPL § 70.10.  The constitutionality of this statute has been frequently

challenged in the state and federal courts, in light of the evolving Supreme Court jurisprudence

regarding whether and when facts relevant to sentencing may be found by judges rather than

juries.  See, e.g., Apprendi v. New Jersey, 530 U.S. 466 (2000); Blakely v. Washington, 542 U.S.

296 (2004); United States v. Booker, 543 U.S. 220 (2005); Cunningham v. California, ___ U.S.

___, 127 S. Ct. 856 (2007).  Bailey argues that § 70.10 is unconstitutional under that

jurisprudence.  Although the Appellate Division held that the federal constitutional issue had not

properly been preserved, 798 N.Y.S.2d at 407-08, relying on People v. Rosen, 96 N.Y. 2d 329

(2001), respondent concedes that because Rosen's holding was intertwined with a ruling on

federal constitutional law, that holding does not represent an independent state ground sufficient

to bar review.

Respondent does argue, however, that this Court may grant habeas relief only if the state

courts' decision was contrary to, or based on an unreasonable application of, Supreme Court law.

28 U.S.C. § 2254(d)(1).  This standard applies where the state courts decided the case on the

merits.  Id.  Here, the Appellate Division ruled that Bailey's claim "is unpreserved for appellate review and, in any event, is without merit."  798 N.Y.S.2d at 407.  Under Second Circuit precedent, a state court ruling is not "on the merits" where the court's discussion of the merits is couched as a hypothetical ruling, such as "the argument is unpreserved, and if the merits were reached, the result would be the same."  Bell v. Miller, ___ F.3d ___, ___, 2007 WL 2469423, at *4 (2d Cir. Aug. 31, 2007).  Where, however, as in this case, the state court rules that a claim is "unpreserved, and, in any event, without merit," the Second Circuit has held that the decision on the merits is an alternative holding that is treated as a ruling on the merits fully entitled to the deference commanded by § 2254(d)(1).  Zarvela v. Artuz, 364 F.3d 415, 417 (2d Cir. 2004).  See also Jimenez v. Walker, 458 F.3d 130, 145 (2d Cir. 2006) (holding that state court decisions are conclusively presumed to be on the merits absent clear statement that they rest on a procedural default).  Given that deference, since the Supreme Court has never ruled on the constitutionality of the New York statute in question, and therefore the Appellate Division's ruling cannot be directly "contrary to" a Supreme Court precedent, the issue before this Court is whether the ruling was an "unreasonable application" of "clearly established" Supreme Court law.

Moreover, as the Supreme Court has made clear, "clearly established Federal law" means "the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision."  Carey v. Musladin, 549 U.S. ___, ___, 127 S.Ct. 649, 653 (2006), quoting Williams v. Taylor, 529 U.S. 362, 412 (2000) (internal quotation marks omitted).  The Appellate Division's decision was rendered on June 28, 2005, and the conviction became final with the denial of certiorari by the Supreme Court on March 27, 2006.  Thus, whichever of those dates is relevant, see Brown (Rudolf) v. Miller, 451 F.3d 54, 57 n.1 (2d Cir. 2006), the question is

7

whether the Appellate Division's decision was an unreasonable application of Supreme Court precedent through <u>Booker</u>, the last decision in the relevant line of precedent as of those dates.

Section 70.10 provides for an alternative enhanced sentence, different from that ordinarily attached to a particular offense of conviction, "[w]hen the court has found . . . that a person is a persistent felony offender, and when it is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest."  N.Y. Penal Law ("NYPL") § 70.10(2).  In such a case, the sentence imposed can be up to 25 years to life in prison.  <u>Id</u>. (providing that persistent felony offender may receive sentence authorized for class A-I felonies); <u>see</u> NYPL § 70.00(2)(a), (3)(a)(I) (providing sentence for class A-I felonies).  In Bailey's case, this sentence is considerably higher than that authorized for ordinary attempted burglaries.  <u>See</u> NYPL §§ 140.20, 140.25, 140.30) (burglary is at most class B felony); NYPL §§ 110.00; 110.05 (attempted burglary is at most a class C felony);  NYPL § 70.00(2)(c), (3)(b) (providing sentence for class C felonies).  Because § 70.10 provides for a sentence beyond the maximum ordinarily authorized for the offense of conviction, the Supreme Court's <u>Apprendi</u> line of cases has obvious relevance.  Unsurprisingly, the statute has been challenged frequently based on this line of cases.

In <u>People v. Rosen</u>, 96 N.Y.2d 329 (2001), the New York Court of Appeals rejected the first of these challenges, finding the statute consistent with <u>Apprendi</u>.  The Court noted that the express holding of <u>Apprendi</u> was that "*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490 (emphasis added), quoted in

Rosen, 96 N.Y.2d at 334.  It then went on to hold that under § 70.10, the only "fact" that

authorizes the imposition of an enhanced sentence is the fact that the defendant is a "persistent

felony offender," defined by § 70.10(1)(a) as a person "who stands convicted of a felony after

having previously been convicted of two or more felonies," as further defined in subsections

(1)(b) and (1)(c).  96 N.Y.2d at 334-35.  Such facts about a defendant's prior criminal record

may constitutionally be found by a judge.  Almendarez-Torres v. United States, 523 U.S. 224

(1998).  Only after finding that the defendant qualifies as a persistent felon does the sentencing

court look to the defendant's "history and character," and the "nature and circumstances of his

criminal conduct" to decide what sort of sentence should be applied.  With respect to the latter

inquiry, "the sentencing court is thus only fulfilling its traditional role – giving due consideration

to agreed-upon factors – in determining an appropriate sentence within the permissible statutory

range."  Rosen, 96 N.Y.2d at 335.  Thus, in the view of New York's highest court, § 70.10 is

simply a traditional recidivist statute, the constitutionality of which was expressly preserved by

Apprendi, under which a court's finding that a defendant has one or more prior convictions

exposes that defendant to the possibility of an enhanced sentence, and the court then applies its

traditional sentencing discretion, unbound by the need to find any further specific facts, to

determine whether in its sole discretion an enhanced sentenced should be imposed, and if so to

select that sentence.

       In Brown (Nelson) v. Greiner, 409 F.3d 523 (2d Cir. 2005), the Second Circuit held that

the state courts' conclusion (in Rosen and in several intermediate appellate decisions) that

§ 70.10 was constitutional was not an unreasonable application of Apprendi.  Id. at 534.  After

agreeing that it was reasonable to conclude that "the judicial finding of at least two predicate

felony convictions comported with the dictates of Apprendi," the Court held that the second inquiry made by the New York courts under § 70.10 "is of a very different sort" than the kind of factfinding about the motivation for a crime that elevated the sentence in Apprendi. Id. "It is a vague, amorphous assessment of whether, in the court's 'opinion,' 'extended incarceration and life-time supervision' of the defendant 'will best serve the public interest.'" Id., quoting NYPL § 70.10(2). Because the statute "does not enumerate any specific facts that must be found by the sentencing court" before it "can conclude that the extended sentence is in the public's 'best . . . interest,'" the Court held that the New York Court of Appeals did not "unreasonably appl[y] Apprendi when it concluded that this second determination is something quite different from the fact-finding addressed in Apprendi and its predecessors." Id. at 534-35.

Both the New York Court of Appeals and the Second Circuit have reaffirmed their positions in light of subsequent case law. In Rudolf Brown, the Second Circuit held that its reasoning in Nelson Brown was not affected by the Supreme Court's application of Apprendi in the capital case of Ring v. Arizona, 536 U.S.584 (2002), noting that "[b]oth Ring and Apprendi involved statues that required judges to find specified facts (i.e., judicial factfinding of an element of the crime) in order to impose an enhanced sentence, not the kind of 'amorphous' determination required by New York's statute (i.e., a determination of the appropriateness of enhanced sentencing)." 451 F.3d at 59. And in People v. Rivera, 5 N.Y.3d 61 (2005), the New York Court of Appeals, considering not only Apprendi and Ring but also Blakely and Booker, repeated its conclusion that the prior felony finding constitutes "the *sole determinant* of whether a defendant is subject to recidivist sentencing as a persistent felony offender." Id. at 66 (emphasis in original); see also id. at 68 ("[T]he predicate felonies are both necessary and

sufficient conditions for imposition of the authorized sentence for recidivism" and the statutory scheme, "by authorizing a hearing on facts relating to the defendant's history and character," grants the defendants a "right to an airing and an explanation" but not "a legal entitlement to have those facts receive controlling weight in influencing the court's opinion."). Once that finding is made, the statute "authorizes indeterminate sentencing," and "no further findings are required." Id. at 66-67; see also id. at 70-71 ("If, for example, a defendant had an especially long and disturbing history of criminal convictions, a persistent felony offender sentence might well be within the trial justice's discretion even with no further factual findings.").

The New York Court's conclusion that the statute is consistent with Blakely and Booker was reasonable. The Supreme Court in Blakely sharply distinguished the kind of determinate, guideline-driven sentencing scheme it confronted there from traditional indeterminate sentencing. While indeterminate sentencing "increases judicial discretion," and "involve[s] judicial factfinding, in that a judge . . . may implicitly rule on those facts he deems important to the exercise of his sentencing discretion," such factfinding "do[es] not pertain to whether the defendant has a legal *right* to a lesser sentence – and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned." 542 U.S. at 309 (emphasis in original). In the Washington scheme found unconstitutional in Blakely, a defendant found guilty of kidnapping by a jury was entitled to a particular sentence unless the judge made particular fact-findings that would authorize a higher sentence. In an indeterminate system such as that established by New York in § 70.10, any offender with the requisite number of prior felony convictions knows that he is risking life imprisonment, which may be imposed by the judge based solely on the judge's discretionary assessment of what the public interest requires –

11

exactly like the hypothetical burglar cited by the Supreme Court in <u>Blakely</u>, who in an indeterminate sentencing system punishing burglary with any sentence between 10 and 40 years, "knows he is risking 40 years in jail."  <u>Id</u>.  The Court reaffirmed that conclusion in <u>Booker</u>, where, despite considerable diversity of views among the justices, "everyone agree[d]" that there would be no constitutional infirmity in a system of advisory guidelines, since, "when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant."  543 U.S. at 233.

The critical fact here is not that the statute does not specify particular aggravating factors. As the Supreme Court has since held – in <u>Cunningham v. California</u>, a decision that the New York courts did not have available at the time they decided Bailey's case – even where a state statute does not identify particular factors as necessary to the imposition of an enhanced sentence, judicial factfinding can run afoul of the Sixth Amendment.  127 S. Ct. at 868-71.  In that case, however, as in <u>Blakely</u>, the statute entitled the defendant to a particular sentence unless the sentencing court identified and specifically found concrete "circumstances in aggravation" additional to the elements of the offense.  <u>Id</u>. at 862.[1]  The New York Court of Appeals, which is

---

[1] The central provision at issue, Cal. Penal Code § 1170, provided for three possible terms for a convicted criminal's sentence.  Upon conviction, the trial judge "shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime."  127 S.Ct. at 861, citing Cal. Penal Code § 1170(b).  The California State Judicial Counsel, directed by Cal. Penal Code § 1170.3(a)(2), adopted rules to guide the judge's sentencing decision. 127 S.Ct at 862.  Those rules define "circumstances in aggravation" as "facts which justify the imposition of the upper prison term" which "shall be established by a preponderance of the evidence."  127 S.Ct at 862, citing Rules 4.405(d) and 4.420(b).  Under the regime, the judge was free to consider a nonexhaustive list of "[f]acts" relating to the crime or the defendant, as well as "additional criteria reasonably related to the decision being made".  127 S.Ct at 862, citing Rules 4.421(a)-(c) and 4.408(a).  Therefore, the statutory scheme "direct[s] the sentencing court to start with the middle term, and to move from that term only when the court itself finds and places on the record facts – whether related to the offense or the offender –

of course the final authority on the meaning of its own state statutes, has explicitly interpreted §

70.10 as not requiring any such findings of additional aggravating circumstances.  Rather, under

New York law the "sole determinant" of eligibility for enhanced sentencing is the presence of

prior felony convictions – a fact that is not subject to the Sixth Amendment jury trial

requirement.  That interpretation is driven by the very language of the statute, which permits the

imposition of an enhanced sentence whenever such a sentence "will best serve the public

interest."  The critical distinction, in other words, is that the judge under § 70.10 is authorized to

impose a life sentence *in her discretion*, based on a general assessment of the public interest, and

not based on a particularized finding either of a specific fact about the offense or the offender

(besides the fact of a prior conviction) defined by the legislature or a sentencing commission, or

one of several alternative possible defined aggravating facts, or even of any particular

aggravating fact determined by the judge herself.[2]

Any contrary interpretation of § 70.10 twists the obvious intent of the Legislature, as

determined by New York's highest court, by elevating form over substance.  In Portalatin v.

Graham, 478 F. Supp. 2d 385 (E.D.N.Y. 2007) (Gleeson, J.), a very thoughtful and highly-

respected district judge (albeit one who had earlier written the opinion in Nelson Brown,

_____

beyond the elements of the charged offense."  127 S.Ct at 862.

[2] Under § 70.10, the sentencing court's "opinion" that the enhanced sentence is in "the public interest" need not be based on a finding of any particular fact, but may be based on the judge's overall assessment of "the history and character of the offender" as well as the "nature and circumstances of his criminal conduct."  By requiring such a global assessment, the statute recognizes that sometimes a judge will choose to impose an enhanced sentence without finding any identifiable aggravating fact, simply based on the offender's dangerousness or amenability to reform, exactly as under the traditional indeterminate sentencing systems approved by the Supreme Court in Blakely.

reversed by the Second Circuit, holding § 70.10 unconstitutional under <u>Apprendi</u>) argued that New York's statute, contrary to its interpretation by the New York Court of Appeals, does not render a defendant eligible for enhanced sentencing unless the sentencing court found as "facts" *both* the presence of the requisite prior felonies *and* that the public interest required a higher sentence, and that it was only after such "fact-finding" that the court could decide, in its discretion, what specific sentence to impose.  <u>Id</u>. at 394.[3]  But Judge Gleeson went on to opine that New York could constitutionally have subjected any felon with two prior felonies to the possibility of life imprisonment solely in the sentencing court's discretion, and then have "guide[d] the discretion of sentencing courts in those cases by telling them to consider the history and characteristics of the defendant and the nature and circumstances of his criminal conduct in determining whether extended incarceration and lifetime supervision will best serve the public interest."  <u>Id</u>. at 407, citing <u>Apprendi</u>, 530 U.S. at 481.

Judge Gleeson concedes that "[f]rom the perspective of the defendant being sentenced, [such] a sentencing scheme . . . might be indistinguishable from the one currently in place: judges would likely consider the same factors at the same phase of the proceedings, and may

---

[3] <u>Portalatin</u> reads NYPL § 70.10 and N.Y. Crim. Pro. § 400.20 (the related procedural provision), in light of <u>Rivera</u>, to "continue[] to require that factfindings be made before the enhanced sentence is imposed."  478 F.Supp.2d at 403-04.  However, in <u>Rivera</u>, New York's highest court stated in no uncertain terms that "the predicate felonies are both necessary and sufficient conditions for imposition of the authorized sentence for recidivism."  5 N.Y.3d at 68.

A state's highest court has the final say in construing state law.  See <u>Johnson v. Fankell</u>, 520 U.S. 911, 916 (1997) ("Neither this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State."); <u>Wainwright v. Stone</u>, 414 U.S. 21, 22-23 (1973) ("For the purpose of determining whether a state statute is too vague and indefinite to constitute valid legislation 'we must take the statute as though it read precisely as the highest court of the State has interpreted it.'"), citing <u>Minnesota ex rel. Pearson v. Probate Court</u>, 309 U.S. 270, 514 (1940)); <u>Winters v. New York</u>, 333 U.S. 507, 514 (1948).

even reach the same results." Id. And of course, this "indistinguishable" sentencing scheme is exactly what New York's highest court says the statute creates. In this Court's view, however, a federal court may not conclude that New York's statute is unconstitutional (and indeed that it is unreasonable for the New York courts to reach a different conclusion) because the federal court reads the statute – contrary to the authoritative view of the New York Court of Appeals –  as differing in a purely formal way from a statute (in practice "indistinguishable") that the federal court would find consistent with the Constitution.

Accordingly, this Court joins those federal district courts and magistrate judges who have considered this statute post-Blakely and have found the New York courts' refusal to invalidate § 70.10 as an unreasonable interpretation of federal constitutional law as enunciated by the Supreme Court. Morris v. Artus, No. 06 Civ. 4095, 2007 WL 2200699, at *10 (S.D.N.Y. July 30, 2007) (Sweet, J.); Phillips v. Artus, No. 05 Civ. 7974, 2006 WL 1867386, at *5-6 (S.D.N.Y. June 30, 2006) (Crotty, J.); Alston v. Woods, No. 04 Civ. 8017, 2005 WL 3312818, at *4 (S.D.N.Y. Dec. 8, 2005) (Gorenstein, M.J.) (it is unclear "that Blakely was decided in time to be considered for the purposes of [petitioner's] claim," however, "[e]ven if [Blakely] constitute[s] 'established Supreme Court law' for purposes of undertaking habeas review, [it] would [not] permit granting of the writ.").[4]  Contra Portalatin; Washington v. Poole, No. 06 Civ. 2415, __ F.

_____

[4] This view, of course, is consistent with the strong consensus of courts considering the constitutionality of § 70.10 in light of Supreme Court case law preceding Blakely. See Lee v. Poole, No. 04 Civ. 09723, slip. op. at 15-20 (S.D.N.Y. Aug 23, 2007) (Pitman, M.J.); Woods v. Poole, No. 03 Civ. 5708, 2006 WL 2711612 (E.D.N.Y. September 21, 2006) (Trager, J.); Woods v. Haponick, No. 05 Civ. 4374, 2006 WL 2482022 (E.D.N.Y. August 25, 2006) (Amon, J.); Lyle v. Artuz,  No. 03 Civ. 5155, 2006 WL 1517750 (E.D.N.Y. May 31, 2006) (Amon, J.); Stokes v. Artus, No. 05 Civ. 1975, 2006 WL 1676437 (S.D.N.Y. June 14, 2006) (Berman, J.); Witherspoon v. Woods, No. 04 Civ. 5528, 2006 WL 721510 (E.D.N.Y. March 6, 2006) (Bianco, J.), aff'd, 210 Fed. Appx. 115 (2d Cir. Dec. 26, 2006).

Supp. 2d __, 2007 WL 2435166 (S.D.N.Y. Aug. 28, 2007) (Koeltl, J.).

## CONCLUSION

For the foregoing reasons, the petition for habeas corpus is denied.  Because petitioner has not made a substantial showing of the denial of a constitutional right with respect to his claims of trial error, a certificate of appealability will not issue as to those claims.  See 28 U.S.C. § 2253(c)(2).  Because reasonable jurists not only may disagree, but have disagreed, about the merits of petitioner's sentencing claim, a certificate of appealability is granted with respect to that issue.  Petitioner is granted leave to pursue that appeal *in forma pauperis*.


SO ORDERED.

Dated: New York, New York
      October 24, 2007

                                            GERARD E. LYNCH
                                   United States District Judge